Briar Hill Realty LLC v Reisner (2024 NY Slip Op 51713(U))

[*1]

Briar Hill Realty LLC v Reisner

2024 NY Slip Op 51713(U)

Decided on December 18, 2024

Civil Court Of The City Of New York, Bronx County

Hassan, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 18, 2024
Civil Court of the City of New York, Bronx County

Briar Hill Realty LLC, Petitioner,

against
Paul Reisner, Respondent.

Index No. LT-317248-24/BX

Amira E. Hassan, J.

Recitation, as required by CPLR 2219(a), of the papers considered in the review of this motion:
Papers Numbered
Order to show Cause 1
Affidavits /Affirmations In Support 2
Affidavits/ Affirmations In Opposition 3
Exhibits on NYSCEF 4
Other - NYSCEF Court File 1 through 33
Upon the foregoing cited papers, the Decision/ Order on Respondent's Order to Show Cause is as follows:
This nonpayment proceeding was commenced by notice of petition and petition dated e-filed on May 5, 2024. Briar Hill Realty LLC ("Petitioner") sought to recover unpaid rent and possession of the subject deregulated premises located at 600 W 246th Street, Apt. 808, Riverdale, New York. Petitioner commenced this summary proceeding when Paul Reisner ("Respondent") allegedly failed to tender the sum of $17,952.48 pursuant to a thirty (30) day rent demand, incorporated in the petition by reference, for outstanding rent from September 2023 through and including February 2024.
Despite prima facie evidence of service of the pleadings, Respondent neither appeared nor answered the petition. See, NYSCEF Doc. No. 5. On July 10, 2024, almost two months later, Petitioner requisitioned a default warrant based on Respondent's failure to answer. See, NYSCEF Doc. No. 6. On November 19, 2024, a judgment of possession was entered against Respondent and a warrant of eviction issued to New York City Marshal Renzulli. See, NYSCEF Doc. No. 8. Notice of entry was then shortly served on Respondent at the subject premises. Now by Order to Show Cause ("OSC") dated November 26, 2024, Respondent is seeking to have the default judgment and warrant vacated against him. Petitioner filed opposition. Despite the Court's attempt at resolving the underlying claim, the parties were not able to reach a mutually agreeable solution. As such, the Court reserved decision on the motion on December 12, 2024.
By counsel, Respondent requests an order from this court vacating the default judgment entered against him on November 12, 2024, pursuant to CPLR § 5015(a)(1) and/or (a)(3) and granting Respondent leave to interpose an answer. Respondent alleges that due to the actions of Petitioner's agent, he was reasonably led to believe, to his detriment, that he did not need to [*2]respond to the petition. Respondent argues Petitioner conduct was gravely misleading and amounts to a fraud under CPLR § 5015(a). Respondent's affidavit details his attempts at resolving the nonpayment claim outside of court after coming home and finding the petition affixed to his door. Respondent communicated with Petitioner that he applied for a One Shot Deal through the Human Resources Administration ("HRA") and was awaiting approval. In support, Respondent attaches his email correspondences with Lisa Guida ("agent"), the managing agent for Petitioner. See, NYSCEF Doc. No. 18, 19, 20, 21. The correspondences start in May 2024 and continue through November 2024. The last email communication appeared to be where the agent informs Respondent of the court's issuance of a warrant of eviction and that $54,526.24 remains outstanding through November 2024. One of the emails highlighted by Respondent's counsel was sent on May 21, 2024, which reads:
Thanks. Please do not go to court. I promise nothing will happen as long as you and I keep in touch and you start paying something [emphasis added]. See, NYSCEF Doc. No. 19, Page 2.
In addition to this ostensible misrepresentation, Respondent asserts he has defenses to this proceeding such as that service of the pleadings was not effectuated with due diligence as per CPLR § 308(4). Furthermore, Respondent alleges he has a claim for wrongful/unlawful eviction. See, NYSCEF Doc. No. 17.
In opposition, Petitioner refutes claims of improper service since Respondent did in fact confirm receipt of the court papers throughout their motion and in a summary proceeding service needs to only be done with "reasonable application" pursuant to RPAPL § 735. Therefore, Respondent may not rely on improper service as the excuse for their default. As to any claims of fraud, Petitioner defends their agent's actions stating that at no time did she represent the proceeding would "unconditionally and indefinitely be held in abeyance." See, NYSCEF Doc. No. 30, Page 2, ¶ 6. The agent's affirmation further defend her actions stating she believed she clearly indicated that Petitioner would be willing to hold the matter "condition on regular update communications and payment toward the accumulating arrears." Id, Page 2, ¶ 7. She then describes their communication as infrequent and sporadic and that no payments were ever made since October 2022. Id, Page 2, ¶ 8, 9. Finally, Petitioner points out that Respondent does not claim to have an actual meritorious defense to the rental arrears, nor does he dispute the balance owed.
CPLR § 5015 does not set forth an exhaustive list of what constitutes grounds sufficient to vacate a court's own judgment. A party may be relieved from a judgment under CPLR § 5015(a)(1) where that party demonstrates a reasonable excuse for the default and a potentially meritorious defense. Youni Gems Corp. v. Bassco Creations Inc., 70 AD3d 454 (Appellate Division, 1st Dep't 2010); 3331 102 St. LLC v. Newport Beach Holdings LLC, 205 AD3d 497 (Appellate Division, 1st Dep't 2022). Whether the excuse is reasonable becomes a "sui generis determination to be made by the court based on all relevant factors, including the extent of the delay, whether there has been prejudice to the opposing party, whether there has been willfulness, and the strong public policy in favor of resolving cases on the merits." See, Gelinas LLC v. Hayes, 2024 NY Slip Op 24273 (Sup. Ct. Bronx Co. 2024) citing Chevalier v. 368 E. 148th St. Assocs., LLC, 80 AD3d 411 (Appellate Division, 1st Dep't 2011).
A different standard applies where a party seeks to vacate a default judgment pursuant to [*3]CPLR § 5015(a)(3) based on fraud, misrepresentation, or other misconduct of an adverse party. It mainly comes down to whether the fraud was intrinsic or extrinsic. Intrinsic fraud exists where a default judgment is obtained by "making fraudulent allegations in the complaint about its legal existence and standing to commence the action." New Century Mortg. Corp. v. Corriette, 117 AD3d 1011 (Appellate Division, 2nd Dep't 2014). Intrinsic fraud would still require that party to demonstrate a reasonable excuse for the default and a potentially meritorious defense to the action. Id. Whereas an extrinsic fraud is where the "fraud [was] practiced in obtaining a judgment such that a party may have been prevented from fully and fairly litigating the matter." EMC Mortg. Corp. v. Toussaint, 136 AD3d 861 (Appellate Division, 2nd Dep't 2016). Extrinsic fraud is treated from a principled perspective such that where a judgment was the outcome of extrinsic fraud, that judgment is considered a nullity. Therefore, there is no requirement that the movant establish a meritorious defense for the judgment to be vacated. A prime example of extrinsic fraud includes "the touting of someone away from the courthouse, to prevent any possibility of an adverse result" or such that the fraud "induces them not to defend the case." Shaw v. Shaw, 97 AD2d 403 (Appellate Division, 2nd Dep't 1983); Matter of Renaissance Econ. Dev. Corp. v. Jin Hua Lin, 126 AD3d 465 (Appellate Division, 1st Dep't 2015). Lastly, a motion to vacate a judgment upon the ground of fraud pursuant to CPLR § 5015 (a)(3) must be made within a reasonable time. Augustin v. Augustin, 79 AD3d 65 (Appellate Division, 1st Dep't 2010).
To start, Respondent's moving papers fail to put forth a potentially meritorious defense. Respondent avers service of the pleadings was flawed because the process server did not comply with due diligence requirements under CPLR § 308. However, as correctly pointed out by Petitioner, service of process in summary proceedings are governed by RPAPL § 735 which allows for conspicuous place service if upon reasonable application personal or substituted service cannot be effectuated. RPAPL § 735(1). Here, the affidavit of service of the notice of petition and petition describes two attempts, one outside and one within business hours, prior to resorting to affix and mail service. See, NYSCEF Doc. No. 5. Lastly, embedded somewhere in Respondent's affidavit is a conclusory statement that he has "several claims" for "wrongful and/or unlawful eviction." However, an eviction never took place and absent more detail surrounding these "claims", the Court does not see merit to such a defense at this time. Since Respondent failed to assert a meritorious defense to the underlying claim, the Court cannot vacate the judgment pursuant to CPLR § 5015(a)(1).
The Court does find it must utilize its discretion and vacate the default judgment and warrant pursuant to CPLR § 5015(a)(3), in the interest of substantial justice, due to the distinct unrebutted facts of this case which constitute an extrinsic fraud such that a meritorious defense is not required. Proof of extrinsic fraud intrinsically consists of a both a meritorious defense and reasonable excuse for the default. Shaw v. Shaw, 97 AD2d 403 (Appellate Division, 2nd Dep't 1983). The Court also finds that Respondent moved for the instant relief timely having filed the instant motion within a week of issuance of the default judgment. Upon review of the email communications attached to Respondent's motion, which Petitioner's agent does not dispute the authenticity of, it may very well be that the agent genuinely intended to assist Respondent in obtaining rental arrears from HRA as those usually require some cooperation on the part of the landlord to process. In fact, Respondent was the one to initially contact the agent after getting served with court papers. However, the consequences of not answering in a nonpayment proceeding are simply too great to overlook and the Court cannot take situations where a party is [*4]instructed not to answer lightly.
As per the affidavit of service, the pleadings were affixed to the door of the subject premises and a copy was mailed on May 14, 2024. Thus, the time to answer the pleadings started to run. Respondent repeatedly confirmed with the agent that his court situation was "on hold" and that he knew he initially had just ten days to answer. See, NYSCEF Doc. No. 19, Page 3. On May 21, 2024, the agent confidently replied with the following message:
The case is on hold. The attorneys take their instructions from me so as long as I have the account marked to hold all will be OK. Let me know if you need anything else.
This was followed by another email on the 21st that specifically directed Respondent not to go to court (referenced earlier in this Decision). While the Court does not wish to discourage parties from resolving their disputes outside the halls of a courthouse, where feasible, once court proceedings have commenced, it is not a wise decision to simply not show up. It is particularly imprudent for an adverse party to affirmatively advise an unrepresented litigant not to go to court once legal proceedings have already commenced. Despite the assurances provided by the agent and regardless of her intentions, the conduct was misleading. There was no stipulation or notice filed with the court that would have effectively placed the case on "hold." While the agent was steadfast in her affidavit that it was not reasonable for Respondent to believe the purported "hold" would last forever, the time to answer was never tolled. Therefore, once the statutorily prescribed time to answer lapsed, Petitioner could seek a default judgment despite any prior out of court arrangements. Such that two months later, Petitioner successfully requisitioned a default warrant based on Respondent's failure to answer the very same petition he was told not to worry about. See, NYSCEF Doc. No. 6, Guida Affidavit of Default for Issuance of a Warrant, Page 4. Under the totality of the circumstances, while the actions here may not fit squarely within the idea of "fraud", the outcome is intended to preserve the sanctity of the legal proceeding.
The portion of Respondent's motion seeking leave to interpose an answer is granted but only to the extent that the answer shall be deemed a "general denial" absent a motion for leave to amend. The two defenses raised in the instant motion, defective service and wrongful eviction, are without merit. Any request to interpose additional defenses not specifically included in the underlying motion must include an explanation as to why they weren't raised prior.
Accordingly, it is SO ORDERED that any default judgment and warrant entered against Respondent is vacated forthwith; ORDERED that a "general denial" is entered by the Court as Respondent's answer and ORDERED that Respondent serve a copy of this Decision/Order on Petitioner along with notice of entry and upload proof thereof to NYSCEF.
This matter shall appear on the court's calendar for a pre-trial conference in Part J, Room 490, on January 22, 2025, at 9:30am. This constitutes the Decision/Order of the Court. A copy of same to be uploaded to NYSCEF.
Date: December 18, 2024
Bronx, New York
Hon. Amira E. Hassan
Housing Court Judge